IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLOTTE PINCKNEY, et al., | : | |
|     Plaintiffs | : | |
| | : | CIVIL ACTION |
| v. | : | NO. 16-5350 |
| | : | |
| THE PEP BOYS – | : | |
| MANNY MOE & JACK, | : | |
|     Defendant. | : | |

**MEMORANDUM**

Jones, II    J.                                                                                                       October 30, 2018

**I.    Introduction**

Plaintiffs, Charlotte and Kyle Pinckney, brought this action against Defendant, The Pep Boys – Manny Moe & Jack, ("Pep Boys"), alleging racial discrimination in the making and enforcement of contracts in violation of 42 U.S.C. §§ 1981 and 1982. Plaintiffs allege that Defendant's agent denied Plaintiffs service because of their race.[1] Defendant timely moved for summary judgment on all of Plaintiffs' claims and subsequently filed an Amended Statement of Undisputed Facts ("Am. SUF"). Upon consideration of Defendant's Motion and Exhibits, and Plaintiffs' responses thereto, Defendant's Motion shall be granted in part and denied in part as set forth below.

---

[1] Plaintiffs' race is identified in their own pleadings as "black." (Compl. ¶¶ 4, 17, 25.) Defendant refers to Plaintiffs' race as "African-American." (Def.'s Am. SUF ¶ 15.) For purposes of this discussion, the Court shall use the designation provided by Plaintiffs.

1

## II. Factual Background

### The Parties

Plaintiffs Kyle and Charlotte Pinckney, are a black couple, and are residents of the city of North Charleston, South Carolina. (Compl. ¶ 4; Answer ¶ 4; Am. SUF ¶¶ 15, 16; Resp. Am. SUF ¶¶ 15, 16.)[2] Defendant, Pep Boys, is an automotive aftermarket retail and service provider. (Compl. ¶ 5; Am. SUF ¶ 1; Resp. Am SUF ¶ 1.) Defendant requires all of its employees to follow a Code of Conduct, which demands a high standard of respect and courtesy in customer interactions and expressly prohibits the use of intimidation and abusive language. (Am. SUF ¶¶ 2-4; Resp. Am. SUF ¶¶ 2-4.[3]) Defendant maintains and enforces an Equal Opportunity Policy, which prohibits discrimination on the basis of race, and maintains and enforces an anti-harassment policy that expressly forbids "derogatory or offensive remarks and slurs." (Am. SUF ¶¶ 5, 6; Resp. SUF ¶¶ 5, 6.) Defendant maintains at least two incident reporting hotlines. (Am. SUF ¶ 7; Resp. Am. SUF ¶ 7.) Once an incident is reported, it is turned over to the local Human Resources manager to investigate and resolve. (Am. SUF ¶ 8; Resp. Am. SUF ¶ 8.) Defendant also encourages Area Directors and Store Managers to report all incidents of discrimination and harassment. (Am. SUF ¶ 9; Resp. Am. SUF ¶ 9.) Every two years, Defendant requires managers and associates to complete an e-learning course on workplace harassment and discrimination. (Am. SUF ¶ 10; Resp. Am. SUF ¶ 10.) Defendant requires its employees to complete other

---

[2] In paragraph 16, as well as paragraphs 3-14, and 57 of Plaintiffs' Response to Defendant's Amended SUF, Plaintiffs assert that facts stated in Defendant's Amended SUF are "[d]isputed as immaterial." (*See generally* ECF No. 40). Because Plaintiffs provide no support for their assertions, and because Plaintiffs fail to explain why certain facts are disputed as immaterial, this Court accepts same as undisputed. *See* Fed. R. Civ. P. 56(c) and (e). Furthermore, the extent to which facts are material to this Court's disposition of the present Motion shall be determined by this Court. *See Von Bialy v. Grill*, No. CV 16-42, 2018 WL 1412410, at *1 (W.D. Pa. Mar. 21, 2018) (referring to the determinations of the materiality of facts as conclusions of law).
[3] With respect to all of Defendant's averments concerning Pep Boys' Human Relations policies and practices, see supra, n.2.

trainings, emphasizing customer care and service, including one for new employees, one conducted in-person by area managers, and trainings customized for individual employees' level of customer interaction. (Am. SUF ¶¶ 11-14; Resp. Am. SUF ¶¶ 11-14.)

## **The Incident**

At approximately 3:45 p.m. on June 9, 2016, Mr. Pinckney brought his black 2010 Dodge Charger to a Pep Boys near his wife's place of employment in North Charleston to have the front right tire repaired because it was losing air and he believed he ran over a nail. (Am. SUF ¶¶ 17-19, 27; Resp. Am. SUF ¶¶ 17, 19, 27; Ex. D, K. Pinckney Dep. 42:14-23.)

After arriving at the North Charleston Pep Boys, Mr. Pinckney was serviced by Jason Morton, Service Manager of the store. (Am. SUF ¶¶ 20-22; Resp. Am. SUF ¶¶ 20-22.) Mr. Pinckney told Mr. Morton that he needed a plug in the front right tire and Mr. Morton asked Mr. Pinckney for his contact information and the make and model of his car, which Mr. Pinckney provided. (Am. SUF ¶ 23; Resp. Am. SUF ¶ 23.) Mr. Morton also asked Mr. Pinckney to pull his car up to Service Bay One. (Am. SUF ¶ 24; Resp. Am. SUF ¶ 24.) After Mr. Pinckney pulled his car *into*, rather than *up to*, Bay One, Mr. Morton allegedly[4] said to Mr. Pinckney "You people don't listen." (Am. SUF ¶ 25; Resp. Am. SUF ¶ 25.) Shortly thereafter, Mr. Pinckney gave his keys to Mr. Morton, who placed them in an envelope and indicated he would notify Mr. Pinckney when the car was ready. (Am. SUF ¶ 26; Resp. Am. SUF ¶ 26.) Mr. Pinckney then walked to his wife's place of work, approximately two minutes away. (Am. SUF ¶ 27; Resp. Am. SUF ¶ 27.)

Mr. and Mrs. Pinckney returned to Pep Boys that evening around 7:00 p.m., at which time Mr. Morton allegedly stated "Oh, it's you again." (Am. SUF ¶¶ 28-29; Resp. Am. SUF ¶¶ 28-29.)

---

[4] Some statements contained within the parties' statements of facts are *allegations* of fact. Inasmuch as said statements are presented and affirmed as testimony or allegations, as opposed to facts, they are subtly disputed. However, because these disputed facts provide important context, they shall be included herein for background purposes and specifically designated as either allegation or testimony.

At that time, Mr. Morton directed the service technician, Scott Wurscher, to examine the Pinckney's car tire. (Am. SUF ¶ 30; Resp. Am. SUF ¶ 30.) The Pinckneys observed their car on the lift in Service Bay One. (Am. SUF ¶ 31; Resp. Am. SUF ¶ 31.)

Mr. Wurscher testified that he examined the tire and found it was punctured, such that it could not be inflated because air would rush out as fast as it could be pumped in. (Am. SUF ¶¶ 32,[5] 37.) He also testified he noticed both front tires were low on tread so he recommended replacing the two front tires. (Am. SUF ¶¶ 33-34.) Mr. Morton told Mr. and Mrs. Pinckney they needed *four* new tires. (Am. SUF ¶ 41; Resp. Am. SUF ¶ 41.) Mrs. Pinckney replied they weren't there for new tires, to which Mr. Morton allegedly responded "I don't need any f***ing attitude," and "I'm not doing sh*t for you n***ers." (Am. SUF ¶¶ 42, 43; Resp. Am. SUF ¶¶ 42, 43.) Mr. Morton allegedly further stated to Mr. Pinckney: "You got your girl in here b*tching at me about tires," and then repeated "I'm not doing sh*t for you n***ers." (Am. SUF ¶ 44; Resp. Am. SUF ¶ 44.) Mr. Morton then allegedly told Mr. Wurscher to "drop [the car] and get [that] sh** out of here." (Am. SUF ¶ 43; Resp. Am. SUF ¶ 43.)

Mr. Wurscher testified that Mr. Morton told him to fill the tire with air, so he put a plug in the tire before doing so, since it would not otherwise hold air. (Am. SUF ¶ 35-37.) Mr. Wurscher lowered the Pinckneys' car and drove it out of the service bay. (Am. SUF ¶ 39; Resp. Am. SUF ¶ 39). He testified his work took about two minutes. (Am. SUF ¶ 40; Resp. Am. SUF ¶ 40).

---

[5] Plaintiffs assert in paragraphs 32-36 and 38 of their Resp. Am. SUF that Mr. Wurscher's statements are disputed but, in explaining further, they affirm that Defendant's recitation of Mr. Wurscher's testimony is accurate. (Resp. Am. SUF ¶¶ 32-36 and 38.) Because Plaintiffs' Motion for Sanctions (ECF No. 37), which included a request to strike the deposition testimony of Scott Wurscher, was denied (ECF No. 45), and because this Court finds the statements contained in paragraphs 32-36 and 38 of Defendant's Am. SUF are consistent with the transcript of Mr. Wurscher's deposition (Def.'s Ex. E), paragraphs 32-36 and 38 of Defendant's Am. SUF will be deemed undisputed for purposes of this Motion.

Inside, Mrs. Pinckney spoke to a woman and a man in the retail area and asked for the Pep Boys' complaint hotline phone number, so she could file a complaint against Mr. Morton. (Am. SUF ¶ 45; Resp. Am. SUF ¶ 45.) Thereafter, Mr. and Mrs. Pinckney got in their car and left Pep Boys. (Am. SUF ¶ 46; Resp. Am. SUF ¶ 46.) They were able to drive home safely. (Am. SUF ¶ 46; Resp. Am. SUF ¶ 46.) Plaintiffs never paid for any service from Pep Boys on June 9, 2016. (Resp. Am. SUF ¶ 58; Def.'s Resp. Pls.' Additional Disputed Material Facts ¶ 58.)

Approximately one week later, Mrs. Pinckney told her coworker that Pep Boys repaired the tire. (Am. SUF ¶ 58; Resp. Am. SUF ¶ 58.) On July 24, 2016, forty-five days later, the Pinckneys replaced the two front tires. (Am. SUF ¶ 49; Resp. Am. SUF ¶ 49.) Mr. Pinckney had to put air in the tire at least once during that forty-five-day time period, though he could not recall when. (Am. SUF ¶ 48; Resp. Am. SUF ¶ 48.)

### The Hotline Complaint

Later in the evening of June 9, 2016, after the Pinckneys left Pep Boys, Mrs. Pinckney called the hotline to report the Pickneys' encounter with Mr. Morton. (Am. SUF ¶ 50; Resp. Am. SUF ¶ 50.) The complaint was forwarded to Pep Boys' Area Director Shane Helton. (Am. SUF ¶ 51; Resp. Am. SUF ¶ 51.) Mr. Helton and Mrs. Pinckney exchanged voicemails until June 15, 2016 but were never able to personally speak to one another. (Am. SUF ¶¶ 52-54; Resp. Am. SUF ¶¶ 52-54.) After three days of inactivity, Pep Boys closed Mrs. Pinckney's complaint on June 18, 2016. (Am. SUF ¶ 55; Resp. Am. SUF ¶ 55.) Mr. and Mrs. Pinckney both testified Mr. Morton was the only person at Pep Boys who treated them differently because of their race. (Am. SUF ¶ 56; Resp. Am. SUF ¶ 56.) At some point, Mr. Morton accessed Pep Boys' electronic complaint filing system and falsely accused the Pinckneys of threatening to kill him. (Resp. Am. SUF ¶ 55).

### III.     Summary Judgment Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if

5

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal citations and quotation marks omitted). Therefore, in order to defeat a motion for summary judgment, the non-movant must establish that the disputes are both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 at 325). "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "At the summary judgment stage of proceedings, courts do not 'weigh the evidence or make credibility determinations,' but, instead, leave that task to the fact-finder at a later trial if the court denies summary judgment." *Halsey v.*

*Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) (quoting *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).

**IV. Discussion**

Defendant's Motion for Summary Judgment contains three arguments. First, Defendant argues Plaintiffs' Race Discrimination Claims under 42 U.S.C. §§ 1981 and 1982 fail as a matter of law because Plaintiffs received the service they requested. (Def.'s Mot. Summ. J. 3, ECF No. 33-1.) Second, Defendant argues Summary Judgment should be granted on Plaintiffs' 43 P.S. § 955 PHRA Claim because Plaintiffs withdrew that claim. (Def.'s Mot. Summ. J. 6, ECF No. 33-1.) Finally, Defendant argues Summary Judgment should be granted as to Plaintiffs' request for punitive damages because Defendant is not vicariously liable for the conduct of its employee, as Defendant made good faith efforts to comply with Federal Anti-Discrimination laws. (Def.'s Mot. Summ. J. 7, ECF No. 33-1.)

**A. Plaintiffs' 42 U.S.C. §§ 1981 and 1982 Racial Discrimination Claims**

Plaintiffs allege that Defendant is liable for its employee's racially discriminatory behavior because said behavior interfered with Plaintiffs' right to make and enforce contracts in violation of 42 U.S.C. §§ 1981 and 1982. (Compl. ¶¶ 20, 28.) Defendant counters that it serviced Plaintiffs' car, so Plaintiffs' right to contract was not denied and their race discrimination claims therefore fail as a matter of law. (Def.'s Mot. Summ. J. 3, ECF No. 33-1.)

"Although not identical, the requisite elements of claims under §§ 1981 and 1982 are quite similar." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). Section 1981 provides that *"all persons* ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (emphasis added). Relevant here, § 1981"does not limit itself, or even refer, to employment contracts but embraces all contracts and therefore includes contracts by which…[one]... provides service to another." *Brown v. J. Kaz, Inc.*, 581 F.3d 175,

7

181 (3d Cir. 2009). Section 1982 provides that "[a]ll citizens of the United States shall have the same right…as is enjoyed by white citizens…to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. In cases involving race discrimination, the Third Circuit has consistently applied the burden shifting analysis outlined by the Supreme Court in *McDonnell Douglas*.[6] *Jones v. Sch. Dist. Of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (applying the McDonnell Douglas framework to § 1981 discrimination claims); *Pamintuan v. Nanticoke Memorial Hospital*, 192 F.3d 378, 385 (3d Cir. 1999) ("We analyze section 1981 claims under the familiar *McDonnell Douglas* shifting burden framework used in Title VII discrimination cases."). As such, Plaintiff must first establish a *prima facie* case. *McDonnell Douglas,* 411 U.S. at 802. This Court will address Plaintiffs' §§ 1981 and 1982 race discrimination claims *seriatim*.

**1. § 1981 Claim**

To succeed in their § 1981 claim, Plaintiffs must first establish a *prima facie* case of race discrimination. *McDonnell Douglas,* 411 U.S. at 802. To make out a *prima facie* case, they "must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Phillip Morris, Inc.*, 250 F. 3d 789, 797 (3d. Cir. 2001).

Defendant, in its Answer to Plaintiffs' Complaint, initially disputed the first element of Plaintiffs' *prima facie* case—Plaintiffs' race—as well as the second element, Mr. Morton's racial animus as evidenced in his manner of speaking. (Answer ¶¶ 4, 17-23.) However, Defendant later conceded the first element and did not actively dispute the second in its Motion for Summary Judgment. (Am. SUF ¶¶ 15, 25, 42-44.) With respect to Plaintiffs' § 1981 claim, Defendant's Summary Judgment argument exclusively concerns the third element of Plaintiffs' *prima facie*

---

[6] *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

case: the infringement of Plaintiffs' protected right to contract. (Def.'s Mot. Summ. J. 3-6, ECF No. 33-1.)

As set forth at greater length above, in support of its argument that Pep Boys serviced Plaintiffs' tire on June 9, 2016, Defendant asserts that:

- The tire in question could not hold air at the time it was in Defendant's service bay;
- Mr. Wurscher, the technician who performed the work, plugged the tire;
- After Mr. Wurscher performed the work, the tire held air;
- The Pinckneys drove the car home safely after leaving Pep Boys without having to inflate the tire with additional air;
- The Pinckneys did not replace the tire for another forty-five days; and,
- Mrs. Pinckney told her coworker that Pep Boys plugged the tire.

In opposition to Defendant's argument, Plaintiffs assert that:

- The tire was not plugged;
- Mr. Pinckney had to put air in the tire at least once before the Pinckneys replaced the tire forty-five days later;
- Mr. Morton said he wouldn't "[do] sh*t" for the Pinckneys; and,
- Pep Boys could not provide a transaction record showing the Pinckneys' tire was repaired.

The parties' assertions regarding whether Plaintiffs' tire was serviced are related to a material issue: the third element of Plaintiffs' *prima facie* case—whether Plaintiffs' protected right to contract was infringed. *Liberty Lobby, Inc.*, 477 U.S. at 248; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003) ("A factual dispute is material if it bears on an essential element of the plaintiff's claim."). Because there is a dispute as to this material issue, summary judgment for Defendant cannot be granted unless the Court finds that the dispute presented by Plaintiffs is not genuine, meaning a reasonable jury could not find for the Plaintiffs under the facts

as presented. *Natale*, 318 F.3d at 580 ("A factual dispute is … genuine if a reasonable jury could find in favor of the nonmoving party."). Defendant provided testimonial evidence that the tire could not hold air, that Mr. Wurscher plugged the tire, and that Mrs. Pinckney told her coworker that Pep Boys fixed the tire. Plaintiffs provided testimonial evidence that the tire was not repaired and that it continued leaking after they left Pep Boys.

"In considering … a motion for summary judgment, we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)) (quotation omitted). Applying this standard, this Court concludes a reasonable juror could find that Plaintiffs drove away from Pep Boys with their tire in the same condition it was in before they arrived at Pep Boys. This presents a genuine issue of material fact about whether Plaintiffs received service from Defendant and thus, whether Plaintiffs' protected right to contract was infringed. Therefore, this Court denies Defendant's Summary Judgment Motion as it relates to Plaintiffs' § 1981 racial discrimination claim.

### 2. § 1982 Claim

"The elements of a claim under § 1982 are (1) defendant's racial animus; (2) intentional discrimination; and (3) deprivation of plaintiff's property right based upon race." *Campbell v. Koslosky*, No. 06-3494, 2007 U.S. Dist. LEXIS 14898, at *20 (E.D. Pa. Feb. 28, 2007) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789 (3d Cir. 2001)). Plaintiffs' § 1982 claim fails on the third element.

When Plaintiffs went to Pep Boys, they specifically sought to contract for a service, not for property. Indeed, as expressed by Mrs. Pinckney, they were "not [there] for … new tires." (Def.'s Ex. C, C. Pinckney Dep., 46:14-15.) Plaintiffs came to have their tire repaired. (Def.'s Ex. C, C. Pinckney Dep., 46:15-16; Def.'s Ex. D, K. Pinckney Dep., 42:14-19. Because Plaintiffs at no time

sought to contract with Pep Boys for real or personal property, and because § 1982 protects the rights of "[a]ll citizens" to deal in "real and personal property," Plaintiffs cannot establish the third element of their *prima facie* case under § 1982. So their § 1982 claim fails as a matter of law. 42 U.S.C. § 1982. *See also City of Memphis v. Greene*, 451 U.S. 100, 120–22 (1981) (listing cases that broadly define the scope of § 1982, but all in terms of property rights); *Campbell*, 2007 U.S. Dist. LEXIS 14898, at *20 (dismissing a § 1982 claim that did not allege deprivation of a property right); *Clark v. State Farm Ins. Co.*, No. CIV. A. 89-0977, 1989 WL 104833, at *3 (E.D. Pa. Dec. 15, 1989) (dismissing a § 1982 claim that did not allege deprivation of a property right). Therefore, with respect to Plaintiffs' § 1982 claim, Defendant's Motion for Summary Judgment shall be granted.

### B. PHRA Claim

Defendant moves for Summary Judgment on Plaintiff's retracted PHRA claim. (Def.'s Mot. Summ. J. 6-7, ECF No. 33-1 (citing Pls.' Resp. Def.'s First Set Interrog.).) Because Plaintiffs withdrew[7] said claim, Defendant's associated Motion is moot and will be denied as such.

### C. Punitive Damages

Plaintiffs seek $7,000,000 in punitive damages in connection with their race discrimination claims. (Compl. 6.) Defendant moves for summary judgment on the issue of punitive damages, arguing it is not vicariously liable for Mr. Morton's behavior because, through its employee training programs, Defendant made good-faith efforts to avoid such behavior by its employees. (Def.'s Mot. Summ. J. 8, ECF No. 33-1.) In support of its argument, Defendant presents evidence of its anti-discrimination policies and programs, and cites to *Kolstad v. Am. Dental Ass'n*, 527

---

[7] Plaintiffs confirmed withdrawal of their 43 P.S. § 955 claim on page thirteen of their Brief in Opposition to Defendant's Motion for Summary Judgment. (ECF No. 39.) Said motion is therefore dismissed with prejudice.

U.S. 526 (1999) and *Ridley v. Costco Wholesale Corp.*, 217 F. App'x 130 (3d Cir. 2007) for the proposition that punitive damages are not warranted under the circumstances of this case.

In relevant part, *Kolstad* stands for the principle that where an employer makes a good-faith effort to educate itself and its employees on federal anti-discrimination laws by creating and implementing anti-discrimination programs, those employers should not be held vicariously liable for punitive damages due to the errant discriminatory behavior of even a managerial employee. 527 U.S. at 542. In *Ridley*, the Third Circuit held that an employer made a good-faith effort when it "maintained policies against discrimination and harassment and an Open Door policy for reporting complaints of discrimination or harassment, … trained new supervisors with respect to [the employer's] harassment complaint policy and provided supervisors with detailed materials regarding the supervisor's obligation to address discrimination issues, … [and] trained its … managers with regard to handling complaints of discrimination and instructed managers that such complaints were to be taken seriously." 217 F. App'x at 137-38 (citing *Kolstad*, 527 U.S. at 542).

Plaintiffs here also cite *Kolstad* and *Ridley*,[8] but with different emphasis. (Pls.' Br. Opp'n Def.'s Mot. Summ. J. 13.) Plaintiffs emphasize that an employer may only be held vicariously liable for the discrimination of its employee if the employee was a manager and was acting in the scope of his employment. *Id*. Defendant does not dispute that Mr. Morton was acting as a service manager, nor does Defendant dispute that Mr. Morton was acting in the scope of his employment.

---

[8] The plaintiff in *Ridley* argued the employer's inadequate investigation into his discrimination complaint created a genuine issue of fact as to whether the employer made a good faith effort to implement and enforce its anti-discrimination policy. 217 F. App'x at 138. Similar facts exist here with respect to Mrs. Pinckney's hotline complaint since she and Defendant's Area Director, Mr. Helton, only traded voicemails and never actually spoke. But the Third Circuit rejected that argument, holding that maintenance and implementation of a policy and program was adequate. *Id*. Likewise, while Mr. Morton's manipulation of the electronic record of Mrs. Pinckney's grievance may be indicative of inadequate investigation, it does not negate the existence and implementation of Defendant's anti-discrimination policy and program and it does not negate the fact that Mrs. Pinckney was able to file a grievance, and have Defendant's Area Director not only respond but follow up.

12

However, the manager and scope of employment requirements articulated in *Kolstad* and *Ridley* and cited by Plaintiffs are necessary but not sufficient conditions for vicarious liability of an employer. *Kolstad*, 527 U.S. at 544-45 (articulating other, independent, policy-based conditions for vicarious liability). Thus, Plaintiffs' manager and scope of employment argument is not sufficient.

Plaintiffs additionally rely upon *Arguello v. Conoco, Inc.* for the proposition that the restrictive *respondeat superior* rules that apply in employment discrimination cases do not apply or are more relaxed in public accommodations discrimination cases. (Pls.' Br. Opp'n Def.'s Mot. Summ. J. 13-14 (citing 207 F.3d 803 (5th Cir. 2000)).)[9] Plaintiffs also cite *Arguello* for the proposition that an employer may be found vicariously liable under general agency principles. (Pls.' Br. Opp'n Def.'s Mot. Summ. J. 14.)

The distinction articulated in *Arguello* between employment discrimination and public accommodations discrimination is not based on any law which is binding in this Circuit. 207 F.3d at 810-11. Moreover, the rationale and policy consideration upon which the Supreme Court relied in *Kolstad*—that of encouraging employers to maintain and implement anti-discrimination policies and programs—apply the same in employment discrimination cases and in public accommodations discrimination cases.

The Fifth Circuit's discussion of general agency principles in *Arguello* does not suggest that agency, by itself, is sufficient to impose liability. 207 F.3d at 807-08. Furthermore, the Supreme Court, in *Kolstad*, took general agency principles into account when it decided that employers who make good-faith efforts to comply with the law should not be held vicariously liable for the discriminatory behavior of their employees. 527 U.S. 526, 544 ("[I]t is improper ordinarily to award punitive damages against one who himself is personally innocent and

---

[9] Plaintiffs neglected to add a pincite and erroneously refer to Conoco as "Conono."

13

therefore liable only vicariously.") (citing Restatement (Second) of Torts § 909 (1979) (duplicated in Restatement (second) of Agency § 217C (2010)). The Supreme Court considered an employer's good faith efforts at compliance with federal anti-discrimination law to be evidence that the employer never acted with reckless disregard of federally protected rights. *Id*.

The undisputed facts in this case show that Defendant made good faith efforts to conform to applicable federal law by creating and implementing a relevant Code of Conduct, policies, and training programs. Defendant maintains a Code of Conduct requiring respect and courtesy on the part of all employees. Defendant requires its employees to complete various customer service trainings, which review Defendant's policies against harassment and discrimination. Defendant has a system in place for reporting grievances and it encourages directors and managers to report all incidents of discrimination and harassment. In light of Defendant's good-faith efforts to prevent the kind of intolerable racial animus alleged, Defendant may not be held vicariously liable for punitive damages for Mr. Morton's actions. Defendant's Motion for Summary Judgment will therefore be granted with respect to Plaintiffs' request for punitive damages.[10]

## V. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment shall be granted in part and denied in part. An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
C. Darnell Jones, II

---

[10] Plaintiff did not successfully oppose or dispute any facts relevant to Defendant's Motion for Summary Judgment on the issue of punitive damages. Plaintiffs therefore failed to shoulder their burden with respect to that issue. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) ("If the moving party meets its burden, the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial.") (internal citations and quotation marks omitted). *See also supra*, nn.2, 3.